82    MILLER & ENGLISH V. JANNETT & FRANKE.    [Galv. Term,

Statement of the case.

---

MILLER & ENGLISH ET AL. V. JANNETT & FRANKE ET AL.

(Case No. 1882.)

1. EVIDENCE.— The invoice book, known by the witness to contain a correct description of goods seized under legal process, may be looked to by him for the purpose of refreshing his memory as to the character of the goods and their value.

2. MEASURE OF DAMAGES.— The measure of damages for a wrongful seizure and conversion of goods is their true value at the place where they were seized and at the time of seizure — not the amount they would bring if sold at retail, nor what a purchaser would give if compelled to take the entire stock, but their value in the packages and in their condition at the time of seizure.

3. EVIDENCE.— A judgment debtor was introduced as a witness by his vendees, in a suit by them against his creditors for wrongfully seizing the stock of goods conveyed by him for his debt. The sale was attacked for fraud, and it was shown that the witness remained in apparent possession after the sale. On cross-examination the defendant asked the witness if he did not, a few days after he made the bill of sale of the goods to plaintiff, say, in the store, that if his creditors would not levy on the goods he would have them all back again in a few days. Held, that the question was proper, and within the rule which allows the credibility of a witness to be impeached by showing that he has made statements out of court, of facts relative to the issue, contrary to what he has testified at the trial. (The witness was introduced to establish the fact that his sale was in good faith.)

4. FRAUD.— If the elements of fraud are shown to have existed in a sale, and it is afterwards attacked for fraud by creditors, it is immaterial what may have been the real intention of the parties. In such a case no good intention of the parties at the time to ultimately pay creditors, testified to by the parties themselves, can make that valid which the law pronounces void.

5. MEASURE OF DAMAGES.— Probable profits, which might have been realized by continuing to retail goods claimed to have been illegally levied on and sold, cannot form the basis for compensatory damages in a suit brought to recover for their illegal seizure. (Citing R'y Co. v. Joachimi, 58 Tex., 456, and other cases.)

APPEAL from Burleson. Tried below before the Hon. I. B. McFarland.

Jannett & Franke brought this suit in the district court of Burleson county against Miller & English and S. G. Wilson, for damages,

actual and exemplary, for an alleged unlawful seizure and conversion of certain personal property claimed by the plaintiffs. The case was tried by a jury, and resulted in a verdict and judgment for the plaintiffs for $846.97 actual and $500 exemplary damages.

Jannett & Franke claimed the goods under a bill of sale from E. O. Jannett and wife, dated December 18, 1882. The defendants justified under a judgment and execution in favor of Miller & English against E. O. Jannett and wife, under which the seizure was made by Wilson as sheriff, Miller & English being prior creditors, and they attacked the good faith of the transfer to plaintiffs.

The charge in the petition was that, in making the seizure, the defendant Wilson was instigated by his co-defendants, and that they acted wantonly, wilfully and maliciously, and with intent to injure and oppress the plaintiffs. The evidence shows that Miller & English were plaintiffs in the writ, but had no connection with the levy, and so far as appears were not aware of it. Wilson made the levy in the course of his official duty as sheriff. On behalf of the defendants it was shown that Miller & English were creditors of E. O. Jannett and wife prior to the transfer to plaintiffs. The grantors were largely indebted and insolvent. At and before the transfer creditors were pressing for their debts. The transfer was out of the usual course of the business of the grantors. Franke was in business elsewhere; August Jannett was a common workman. The bill of sale, which was recorded, recited the payment of a cash consideration of $850. No invoice or account of stock accompanied the bill of sale. There was no apparent change of possession after the making of the bill of sale, but E. O. Jannett continued in apparent possession after as before the transfer, continuing the business in the same house, which was on his homestead premises, and under the license previously issued to him. One of the grantees was a brother and the other a brother-in-law of the grantors. The transfer included all of the property of the grantors subject to execution.

The witness E. O. Jannett was permitted, over objection of defendants, to testify as follows: Being shown a book in which was what purported to be an inventory of the goods sold to plaintiffs December 18, 1882, he said: "The inventory is in the plaintiff Franke's handwriting. I was present when it was made. It is correct, so far as I know. The prices opposite the several articles are the prices agreed on on the day of sale. They are the wholesale prices of the goods. The inventory of the goods was turned over to the plaintiffs that same day. The price of the goods was $850."

In the sixth clause of the charge to the jury, they were instructed to find for the plaintiffs if the transfer was made in good faith, to which the court added: "In this connection, you are instructed that no declaration made by E. O. Jannett or wife after the sale to H. Franke and August Jannett can be heard to impeach the validity of the sale."

The defendants' evidence tended to show that after the transfer to the plaintiffs December 18, 1882, and before the levy of defendants' execution, which occurred on the 30th, E. O. Jannett continued in possession of the property as the apparent owner.

On cross-examination of E. O. Jannett, who was a witness for the plaintiffs, the defendants asked him the following questions:

1. Did you not, in a conversation with Judge McIver, in the store, a few days after the bill of sale to plaintiffs, say to him in substance, that if they (meaning your creditors) would let you alone, you would pay them in a few days?

2. Did you not say to him in substance, on the same occasion, if they (meaning your creditors) would not levy on the goods, you would have them all back in your own name in a few days?

3. Did you not say, a few days after the levy of the defendants' writ, in the store, to Judge McIver and Jack Farr and Mr. Whittingham, in substance, that if the defendants Miller & English had not levied on your goods and broken you up, you would have had the goods back in your own name and paid all your debts before now?

Which questions and the answers thereto were, on objection of plaintiffs, excluded; and afterwards the court refused to permit the defendants to ask Judge McIver and the others the impeaching questions suggested in the questions so propounded to the witness E. O. Jannett.

On the direct examination of their witness, E. O. Jannett, the plaintiffs asked him the following question: "Was it your intention or purpose, in making the sale to August Jannett and H. Franke, to defraud the defendants Miller & English, or anybody else?" To which defendants objected — first, because the question was leading; and second, because the testimony sought to be elicited was not competent. The objection was overruled, and the witness answered: "It was not." To which the defendants excepted.

*Sayles & Bassett*, for appellants, that there was no ground for according exemplary damages, cited: W. U. Tel. Co. *v.* Brown, 58 Tex., 170; Willis & Bro. *v.* McNeill, 57 Tex., 465; Wallace *v.* Finberg, 46 Tex., 35.

That the reference to the invoice book to refresh memory was improper, they cited: Tucker v. Hamlin, 2 Tex. Law Rev., 203; Blum v. Merchant, 58 Tex., 400, 405.

That, fraud being shown, the intent of the parties was immaterial, they cited: Linn v. Wright, 18 Tex., 317, 336, 337; Briscoe v. Bronaugh, 1 Tex., 326–339; Van Bibber v. Mathis, 52 Tex., 406–409; Peiser v. Peticolas, 50 Tex., 638.

On the measure of damages, they cited: S. & E. T. R'y Co. v. Joachimi, 58 Tex., 456, 460; Weaver v. Ashcroft, 50 Tex., 428, 445; De la Zerda v. Korn, 25 Tex. Sup., 188, 193, 194; Stell v. Paschal, 41 Tex., 640, 644.

W. K. Homan, for appellee, cited: Railroad Co. v. Burke, 55 Tex., 342; 1 Greenl. Ev., secs. 436–438.

That the exclusion of Jannett's testimony was proper, he cited: Carleton v. Baldwin, 27 Tex., 572; Tucker v. Hamlin, 60 Tex., 171; Bump, Fraud. Conv. (1st ed.), 548, 549, 550.

That the testimony of the plaintiff as to his motives was proper, he cited: Bump, Fraud. Conv. (1st ed.), 553, and cases cited.

WILLIE, CHIEF JUSTICE.— We do not think that the ruling of the court, complained of in the second assignment of error, is erroneous. The invoice book does not seem to have been introduced as evidence, but for the purpose of refreshing the memory of the plaintiff Franke as to the kind of goods seized by the sheriff, and their value. He seems to have known that the list contained in the invoice was correct, and to have attached his valuation to each article in it. Although the prices attached might not have been admissible, if no more was shown than that they were the purchase prices with expenses added, yet when the witness stated that these were what the goods were worth at the place where they were seized and at the time of seizure, he stated the true measure of damages.

This was not the amount they would bring if sold at retail, nor what a purchaser would give if compelled to take the entire stock together; but it was their value in the packages and in the condition they were at the time of seizure. It was not improper to arrive at this by finding the value of the different articles composing the stock, and making an aggregate of the whole, in the same manner as a merchant would do who was buying the entire stock in trade of another.

We think that in view of the fact that the sum of the various

articles composing the invoice was stated by the witness to be the true value of the goods, there was no error in receiving the evidence.

We are of opinion that the court erred in not allowing the counsel for appellants to ask the witness E. O. Jannett as to his statements in conversation with Judge McIver and others, to which the third assignment of error relates.

It is true that the statements of Jannett made subsequent to the transfer to appellees could not be introduced for the purpose of showing that the transfer was fraudulent; but they were admissible for the purpose of laying a predicate for the impeachment of the witness. The fact that E. O. Jannett was to have the goods back in a few days in his own name, and that if the levy had not been made they would have again come under his ownership, and that the levy by the appellants had broken him up, all tended to show an interest in the goods reserved to the grantor, and an understanding between him and the grantees that he was soon to become their owner again. These facts proven, the presumption of fraud was cogent, and the intent of the parties would probably have been developed. The facts, therefore, were relevant to the issue, and whilst they could not be proved by the declarations of the grantee made under the circumstances, they came fully within the rule which allows the credibility of a witness to be impeached by showing that he has made statements out of court of facts relevant to the issue contrary to what he has testified at the trial. 1 Greenl. on Ev., § 462. The question should have been admitted for that purpose.

We think, too, that there was error in allowing the parties to the conveyance alleged to be fraudulent to testify as to their intent in executing and accepting the instrument. If the elements constituting fraud accompanied the sale, it was unimportant what the real object of the parties was; and no honest intention on their part would have made that valid which the law declares shall be void under the circumstances. For instance, if the property was sold for a small consideration or given to another, with the understanding that it was to be returned to the seller or held for his benefit, no secret intention to have it sold and apply the proceeds towards paying the debts of the party conveying would save the property from creditors who had been defrauded by the transaction.

If the secret intent of the parties, to be proved by their own oaths, is to make that an honest transaction which the law brands as fraudulent, and the necessary consequences of which are to defraud innocent parties, then we can never establish fraud by circum-

stances, unless those who have committed the fraud should be honest enough to avow it. The object of such circumstantial proof is to arrive at the intention of the parties; but if, after proving a state of facts wholly inconsistent with anything but a fraudulent intent, and from which the law conclusively presumes it, the perpetrators of the fraud are to escape by stating that, nevertheless, they did not intend to defraud, all circumstantial proof of this character had better be abandoned and the question of fraud or no fraud be made to depend in each case upon what the parties interested in validating the conveyance may have to say as to its legal or fraudulent character.

If what the parties have to say as to their secret intentions is not, in the instance we have stated, to be admitted, its admission in any case as to proof of intent can have little other effect than to confuse the jury, and it should be excluded.

The court also erred in allowing proof as to what profits the appellees might have made from carrying on business with the goods levied on, had they not been taken from their possession. We have frequently held that such profits were not to be taken into consideration in estimating compensatory damages. Railway Co. v. Joachimi, 58 Tex., 456; Railway Co. v. Young, 60 Tex., 201; Tucker v. Hamlin, 60 Tex., 171.

The court admitted proof of such profits in the present case to show the damage resulting to the business of appellees by reason of the seizure of the property by the sheriff at the instance of the appellants, and charged the jury that compensatory damages would include such as would reasonably compensate the plaintiffs for the interruption of their business and their consequent loss thereon. It is clear that the court by this charge authorized the jury to assess as compensatory damages the loss of profits sustained by the appellees, which charge is, in this respect, inconsistent with the previous decisions of this court already cited.

We are of opinion that for the errors indicated the judgment must be reversed and the cause remanded; and it is accordingly so ordered.

REVERSED AND REMANDED.

[Opinion delivered January 20, 1885.]